UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

------------------------------------------------------------------------X
**JOHN HARNOIS,**
                                     **Plaintiff,**

-against-
                                                      **COMPLAINT**
                                                      **Civil Action No:** _____

**BILL GENS LAW OFFICES, PC**
**BILL GENS, ESQ.**
**MEHMET BAYSAN, ESQ.**
                                     **Defendants.**
------------------------------------------------------------------------X

*FILED IN CLERKS OFFICE*
*2020 DEC -2 AM 10:56*
*U.S. DISTRICT COURT*
*DISTRICT OF MASS.*

## THE NATURE OF THIS ACTION
### (Jury Trial Demanded)

**1.** In May 2016, UMASS Dartmouth (herein as UMASSD) officials falsely accused Plaintiff, a graduate school student, of Title IX violations and application misconduct.

**2.** In May 2016, Plaintiff retained Gens Law Offices, (herein as Gens Law), which employed inter alia Attorneys Bill Gens (herein as Gens) and Mehmet Baysan (herein as Baysan), to defend him against UMASSD's attempt to improperly expel him.

**3.** During such representation, Plaintiff insisted that Gens Law sue UMASSD and school officials for damages. Baysan and Gens informed Plaintiff that Gens Law intended to sue UMASSD for Breach of Contract. Likewise Plaintiff insisted Gens Law investigate the allegations, and circumstances around the bogus accusations.

**4.** UMASSD's investigation took four months, after which Plaintiff was found "not responsible for any misconduct," but he was still sanctioned and labeled a school pariah that forced him to withdraw from graduate school.

**5.** After being found "not responsible" Plaintiff insisted Gens Law sue UMASSD and school officials for

1

damages of his reputation, for his loss of opportunity to pursue his graduate school education, and for damage to his scholarship opportunity.

**6.** Baysan advised Plaintiff that because he was reinstated to UMASSD, he had lost any opportunity to sue the school since he had not incurred damages. Other than collect Plaintiff's communications with students and university officials, Gens Law did not conduct any investigation into the allegations or develop any other theory of damages of Plaintiff.

**7.** Baysan and Gens knew that such advice - of no recourse for damages - was not true when Plaintiff was so informed.

**8.** Plaintiff informed Baysan and Gens of the damages of reputation and inability to pursue his graduate school education and doctorate degree as the result of actions of UMASSD.

**9.** Plaintiff depended on the legal advice that no legal recourse was available to him for the damages he incurred and would incur as the result of the bogus investigation and false accusations. As a result he took no timely action, he was eventually constructively expelled; he lost use of his scholarship; he was constructively exiled from his chosen narrowly defined profession, and became severely depressed.

**10.** In February 2019, Plaintiff literally woke from a dream with the epiphany that the investigation was a hoax to rid him from school solely because he had a prior conviction. Plaintiff initiated his own investigation and researched relevant caselaw. In April 2019 Plaintiff filed a federal civil suit (Case No. 19-cv-10705-RGS) against UMASSD and various university officials. In October 2019 Judge Richard Stearns' ruling allowed multiple claims to proceed into discovery having survived UMASSD's Rule 12b1 and 12b6 (Exhibit 3) motions to dismiss.

**11.** As part of this Complaint, Plaintiff incorporates - as exhibits 1 through 3 respectively - his 3rd Amended Complaint and Judge Stearns rulings on University Defendants' 12b1 and 12b6 motions to dismiss.

**12.** In November 2020 Plaintiff settled with UMASSD and University Defendants.

13. Plaintiff now brings this legal malpractice suit against Law Office, Gens and Baysan (jointly herein as "Defendants") for their negligence and deception that led Plaintiff to believe that no causes of action existed against University Defendants and he had no legal recourse against the University Defendants, which caused him substantial damages.

14. The nature of this suit and the overall set of facts follow from Plaintiff's 3rd Amended Complaint in Case No. 1:19-cv-10705-RGS, which Plaintiff attaches herewith for the Court's convenience and for incorporation of facts alleged.

## THE PARTIES

15. John Harnois (Plaintiff), pro se, a legal layman, is a natural person, citizen of the United States, and is a resident of Rhode Island.

16. On information and belief and for all times relevant Defendant Bill Gens Law Offices, PC, was a Professional Corporation duly organized and existing under the laws of the Commonwealth of Massachusetts with its principal place of business in the City of Boston, Massachusetts.

17. For all times relevant Defendant Bill Gens was and is a resident of Massachusetts, and was and is an individual and an attorney licensed to practice law in Massachusetts, was and is an employee of Gens Law with an office in Boston, Massachusetts. Defendant Bill Gens was and is the principal partner and agent of Defendant Gens Law and in doing the things herein alleged was acting within the scope of such employment and agency.

18. For all times relevant Defendant Mehmet Baysan was a resident of Massachusetts, was an individual and an attorney licensed to practice law in Massachusetts, was an employee of Gens Law with an office in Boston, Massachusetts, but now is a resident of New York. Defendant Baysan was directly supervised by Defendant Bill Gens and undertook no action or gave no legal advice without the direct supervision of Defendant Gens.

3

## JURISDICTION

**19.** This Court has diversity pursuant to 28 U.S.C. § 1332, because Plaintiff and each Defendant are citizens of different states and the amount in controversy exceeds $75,000, exclusive of costs and interest.

## FACTUAL ALLEGATIONS

**20.** Gens Law represented Plaintiff and Plaintiff's niece in two prior matters in the Commonwealth of Massachusetts.

**21.** From April 2015 to his matriculation of January 20, 2016, Plaintiff fully disclosed the facts surrounding his conviction of a decade prior to UMASSD Graduate School in his application disclosure statement. Gens Law and Baysan assisted Plaintiff in preparing his application disclosure statement that accurately described the nature of and circumstances surrounding his prior conviction.

**22.** Because Defendants Gens Law, Gens and Baysan had previously represented Plaintiff in a legal and litigation matter and had also represented Plaintiff in drafting and submitting his disclosure statement, Plaintiff contacted Defendant Baysan to discuss retaining Defendants to represent Plaintiff in the Title IX investigation pending with UMASSD beginning in early May 2016.

**23.** Bayan represented to Plaintiff that Gens law was an experienced legal firm specializing with Title IX disciplinary cases, especially cases where foreign male students are falsely accused of misconduct, and the firm pursued civil complaints against universities for violating the rights of male students.

**24.** In early May 2016, Parties signed a retainer for representation with an initial sum of $8,000.

**25.** Plaintiff immediately requested Defendants sue UMASS Dartmouth and other university defendants since his reputation had been destroyed on campus and likely he would not be able to pursue his Ph.D. education nor use his VA scholarship.

**26.** Baysan informed Plaintiff in May 2016 that he and Gens law intended to file a Breach of Contract suit against UMASS. Plaintiff wanted other causes of actions considered.

4

**27.** Plaintiff authorized UMASSD officials to communicate directly with Gens Law and Baysan.

**28.** Plaintiff demanded Defendants conduct their own investigation, which ultimately consisted of solely and only obtaining from Plaintiff communications between him and any student or faculty member and requesting additional details of accusations, which they were denied. Defendants neither interviewed any potential complaining student, nor any student, nor UMASS Dartmouth Police officials, nor Plaintiff's witnesses, nor sought any alternate reasons why UMASSD Officials would seek to expel Plaintiff.

**29.** On July 15, 2016 an investigative interview was held of Plaintiff with counsel in attendance. Defendants neither advocated nor objected to such questions as "Is it true you told other students you intended to visit your children in Georgia?"

**30.** On August 30, 2016 Plaintiff with Baysan attended a meeting with Deborah Majewski, during which she issued Plaintiff a finding of "NOT RESPONSIBLE." Yet regardless of the letter issued, baseless sanctions downgraded Plaintiff's degree, and informed Plaintiff that he would be under tightened scrutiny and supervision of the school. Baysan did not object.

**31.** Thereafter, Plaintiff informed Defendants how his program had been impacted and essentially he was exiled as a pariah.

**32.** Through August 30, 2016 and thereafter in communications with Defendants, Plaintiff sought to sue UMASS Dartmouth. Defendants stated that because he had been "reinstated" he had no legal recourse to sue the school under any circumstance or reason. Each time Plaintiff queried about filing suit, he was told no possible legal remedy existed by filing suit.

**33.** Eventually Plaintiff was treated as a pariah in class by students and professors in his graduate program, so he was compelled to take a leave of absence from UMASS Dartmouth and his graduate program. Plaintiff could not viably return.

## FIRST CAUSE OF ACTION
### For Professional Negligence [Legal Malpractice] Against Defendants

**34.**  Plaintiffs reallege and incorporate Paragraphs 1 through 34, above and Exhibits 1 through 3, as though fully set forth herein.

**35.**  In May 2016 Plaintiff retained Gens Law to represent him related to the Title IX action. Legal advice continued beyond the strict boundaries of the retainer agreement regarding filing suits against UMASS Dartmouth and its officials.

**36.**  As Plaintiff's counsel Gens, Baysan and Gens Law owed a duty of care to Plaintiff, requiring them to exercise the knowledge, skill and ability ordinarily exercised by other similarly situated lawyers. Further, as a purported specialist in litigating and trying high-stakes Title IX, complex litigation cases, the professional services rendered by Gens, Baysan and Gens Law should have been comparable to other complex business trial specialists, imposing upon Gens, Baysan and Gens Law a higher, specialist standard of care.

**37.**  During the course of Defendants' representation of Plaintiff, there were several instances wherein the conduct of the Defendants fell below the applicable standard of care, as set forth herein.

**38.**  Contrary to that duty, Gens, Baysan and Gens Law were professionally negligent in not conducting their own investigation during the Title IX investigation; failure to do so was professionally negligent.

**39.**  A basic investigation by Defendants would have confirmed inter alia: (1) a perennial cheating scandal reported by Plaintiff that would given motive to any purported accuser; (2) that Ms. Cummings and Unnamed professor falsely reported Plaintiff of multiple felony charges, which Judge Stearns cited for supporting defamation claims; (3) that Ms. Cummings and Ms. Majewski contacted schools where Plaintiff corroborated with outside researchers, which terminated communications with Plaintiff, which Judge Stearns cited in support of Plaintiff's claim of intentional interference with advantageous relations; (4) that Mr. Webster promised to maintain confidentiality, which Judge Stearns cited in support of Plaintiff's claim of promissory estoppel; (5) that despite a finding of "not responsible" the school sanctioned Plaintiff, which constructively expelled him.

**40.**  Contrary to that duty, Gens, Baysan and Gens Law were professionally negligent in not researching nationally forefront cases regarding Title IX, which were relevant and similar to Plaintiff's set of facts; failure to

do so was professionally negligent.

**41.** Contrary to that duty, Gens, Baysan and Gens Law were professionally negligent in stating that the only cause of action was breach of contract. Constitutional Law 101 in any law school would have taught that pursuant to the 11th Amendment to the United States Constitution, a state university such as UMASS Dartmouth and its employees acting in official capacity are an arm of the Commonwealth of Massachusetts, which cannot be sued for breach of contract. Every Title IX suit filed for breach of contract against state universities in the United States have failed under the 11th Amendment. Defendants advice to sue under the cause of action of breach of contract was professionally negligent.

**42.** Contrary to that duty, Defendants were professionally negligent by not attempting to appeal the final decision letter that sanctioned Plaintiff even though he was found not responsible. Essentially, Defendants advised no action despite Plaintiff was found not responsible yet still punished.

**43.** The negligent acts and omissions of Gens, Baysan and Gens Law were below the standard of care for comparable attorneys who practice in this community, especially attorneys, purportedly like Gens, Baysan and Gens Law, who purportedly specialized in handling Title IX and University misconduct cases. Defendants' professional negligence was a primary factor in Plaintiffs' delay in filing suit in Federal Court pro se, the sequelae prejudice to Plaintiff in his subsequent suit against UMASS Dartmouth and the loss of compensation he would have received had a suit been filed in 2016. The proper handling of the Title IX matter, and filing a suit against UMASS Dartmouth would have resulted in a collectible judgment in Plaintiffs' favor (far greater than the settlement he was forced to accept), and would have resulted in a collectible, prevailing party attorneys' fee award in Plaintiffs' favor under USC Title 42 Section 1988.

**44.** As a direct and proximate result of Defendants' incompetence and professional negligence, Plaintiff has suffered compensatory damages in an amount to be proven at trial, but estimated to be approximately $750,000 over and above the settled amount with UMASS Dartmouth.

## SECOND CAUSE OF ACTION
### Count II – Fraud Against All Defendants

**45.** Plaintiffs reallege and incorporate Paragraphs 1 through 44, above and Exhibits 1 through 3, as though fully set forth herein.

**46.** Defendants made a false representation of a material fact with knowledge of its falsity for the purpose of inducing the plaintiff to act thereon.

**47.** Defendants were purportedly experienced attorneys in the practice of law related to student disciplinary misconduct and Title IX matters.

**48.** Baysan mailed Plaintiff documents to Plaintiff describing the wave of litigation across universities in the United States as described in Plaintiff's complaint in case 1:19-cv-10705.

**49.** As self-described expert experienced attorneys in Title IX and student misconduct, Defendants reasonably knew of the causes of action inter alia related to Title IX (erroneous outcome, selective enforcement, retaliation in the judication of Title IX matters, deliberate indifference / hostile environment), denial of First Amendment rights and free speech retaliation, defamation, intentional interference with third party advantageous relations, invasion of privacy, promissory estoppel, violation of the MCRA (Mass. Civil Rights Act), etc.

**50.** In February 2019, Plaintiff, who was a legal layman, taught himself the relative substantive and procedural law and applied the facts of his case, intimately known by Defendants, who were highly experienced attorneys. Plaintiff's legal suit filed in April 2019 achieved partial success on the causes of actions that Defendants stated did not exist.

**51.** It's axiomatic that if Plaintiff a layman could apply the case facts to civil litigation, it's reasonable to believe Defendants knew the current case law and how to apply Plaintiff set of facts to relevant causes of action.

**52.** Despite Plaintiff's repeated demands to initiate suit for damages, Defendants repeatedly told

8

Plaintiff that there were no other causes of action, but breach of contract, and upon Plaintiff's "reinstatement," no causes of action could ensue.

**53.** Plaintiff relied on Defendants' false statements, and attempted to continue his degree program, but was constructively expelled.

**54.** As the result of the fraudulent statement, and Plaintiff's detrimental reliance, Plaintiff sustained damages including, without limitation, Plaintiff's academic and career prospects, earning potential, and reputation have been severely harmed. He has sustained significant damages, including but not limited to, damages to physical well-being, emotional and psychological damages, damages to reputation, past and future economic losses, loss of educational and professional opportunities, and other direct and consequential damages.

## THIRD CAUSE OF ACTION
### Count III – Intentional or Negligent Misrepresentation Against All Defendants

**55.** Plaintiffs reallege and incorporate Paragraphs 1 through 54, above and Exhibits 1 through 3, as though fully set forth herein.

**56.** Under Massachusetts law, a plaintiff asserting a claim for intentional or negligent misrepresentation must show "'a false statement of material fact made to induce the plaintiff to act and reliance on the false statement by the plaintiff to his detriment.'

**57.** For an intentional misrepresentation claim, the defendant must know that the statement was false, and for a negligent misrepresentation claim, the defendant must have made the false statement without a reasonable basis for believing it to be true.

**58.** Unlike fraud, negligent misrepresentation does not require an intent to deceive or actual knowledge that a statement is false.

**59.**   Defendants made false statements to Plaintiff in stating that no causes of action could ensue given his set of facts related to UMASS Dartmouth's Title IX action against him.

**60.**   Defendants knew the statements to be false or had no reasonable basis for believing such statements were true.

**61.**   Defendants offered such false statements would induce Plaintiff to accept his plight and would cease demanding the filing of a civil suit against UMASS Dartmouth and its officials.

**62.**   Plaintiff relied on such statements to his detriment and suffered damages. As the result of the misrepresentations, and Plaintiff's detrimental reliance, Plaintiff sustained damages including, without limitation, Plaintiff's academic and career prospects, earning potential, and reputation have been severely harmed. He has sustained significant damages, including but not limited to, damages to physical well-being, emotional and psychological damages, damages to reputation, past and future economic losses, loss of educational and professional opportunities, and other direct and consequential damages.

## FOURTH CAUSE OF ACTION
### Count IV – Breach of Contract Against All Defendants

**63.** Plaintiffs reallege Paragraphs 1 through 62, above and Exhibits 1 to 3, as though fully set forth herein.

**64.** On or about May 12, 2016 Plaintiff signed a retainer agreement with Defendants, entering into an agreement or contract that Defendants would represent him through his Title IX matter.

**65.** Plaintiff was ready, willing and able to perform and did perform in the full payment of every invoice for legal services.

**66.** Defendants were in breach of that contract by ceasing any effort after August 31st when Plaintiff received his findings letter that sanctioned him and not pursuing an appeal or some action that would have abated the impact of sanctions despite the finding of 'not responsible' of the allegations in the Title IX investigation.

**67.** Plaintiff sustained damages as a result.

10

## JURY DEMAND

Plaintiff herein demands a trial by jury of all triable issues in the present matter.

## PRAYER FOR RELIEF

**WHEREFORE,** for the foregoing reasons, Plaintiff requests that this Court enter judgment against Defendants jointly and severally on all counts of this complaint as described above in each count as follows:

(A) Award to Plaintiff punitive damages.

(B) Award to Plaintiff compensatory and other damages in an amount to be determined at trial;

(C) Award reasonable costs and expenses, including attorney's fees, and for pre and post-judgment interest as permitted by law.

(D) Grant such other and further relief as this Court deems equitable and just AND:

### Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a non-frivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11. I agree to provide the Clerk's Office with any changes to my address where case- related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date: December __/__, 2020

Respectfully Submitted:     **John Harnois, Pro Se**

By: /s/ *John Harnois*

510 Child Street, Warren, RI 02885
mav86nois@gmail.com; (508) 333-1728